**IT IS SO ORDERED.**

**Dated:  04:22 PM November 12 2009**

*Marilyn Shea-Stonum*
MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | **Case Nos. 09-55159 & 09-55162** |
| | **(Jointly Administered)** |
| **MICHAEL DAY ENTERPRISES, INC.,** *et al.,* | |
| | **Chapter 11** |
| Debtors. | |
| | **Judge Marilyn Shea-Stonum** |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 361, 362, 363 AND 364 AND FEDERAL BANKRUPTCY RULES 2002, 4001 AND 9014: (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POST-PETITION FINANCING AND USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; (IV) SETTING FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

This matter came before the Court for hearing on November 12, 2009 at 10:30 A.M.

(the "**Interim Hearing**") on the Emergency Motion of the Debtors for Interim and Final Orders:

(1) Authorizing the Debtors to Obtain Secured Post-Petition Financing Pursuant to 11 U.S.C. §§

105, 361, 362, 363, and 364(c) and (d) and Federal Bankruptcy Rules 2002, 4001 and 9014; (2)

Granting Adequate Protection; (3) Modifying the Automatic Stay; (4) Scheduling and Approving

the Form and Method of Notice of Final Hearing; and (5) Granting Related Relief (the

"**Motion**"), filed by Michael Day Enterprises, Inc. ("**MDE**") and M & J Recycling, LLC ("**Recycling**"), debtors and debtors-in-possession (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Cases**"); the Debtors having filed voluntary petitions for reorganization pursuant to chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"), on November 10, 2009 (the "**Petition Date**"), and having requested in the Motion entry of interim and final orders:

(1)     authorizing and approving, pursuant to section 364(c) and (d) of the Bankruptcy Code, the Debtors to obtain debtor-in-possession financing from the DIP Lender (as defined herein) pursuant to the terms and conditions of (a) this Interim Order and any Final Order (as defined herein), (b) the DIP Loan Agreement (as defined herein) and all ancillary documents referred to in this Interim Order, the DIP Loan Agreement or any final order and/or required to be executed by the Debtors in connection therewith (collectively, and as more particularly defined in the Ratification Agreement (as defined herein), the "**DIP Financing Documents**"), and (c) the budget annexed as Exhibit A hereto (the "**Budget**") (collectively, the "**DIP Credit Facility**");

(2)     authorizing and approving, pursuant to section 363 of the Bankruptcy Code, the Debtors' use of Cash Collateral (as defined herein) of the Pre-Petition Lender or the Pre-Petition LC Issuer (as defined herein);

(3)     granting the Pre-Petition Lender and the Pre-Petition LC Issuer (a) adequate protection, including, without limitation, adequate protection against the diminution in the value or amount of the Pre-Petition Collateral (as defined in the Ratification Agreement), (b) Replacement Liens (as defined herein), and (c) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code, such Replacement Liens and section 507(b) superpriority administrative expense claim to be subject to the Carve-Out (as defined herein) and

the liens, security interests and superpriority treatment granted to the DIP Lender, as more particularly set forth herein; and

(4)     granting any further and related relief as the Court deems just and equitable.

Upon the record of the Cases and the record of the Interim Hearing, good and sufficient cause appearing therefor, and it appearing to be in the best interests of the Debtors' estates and creditors;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW ON AN INTERIM BASIS FOR PURPOSES OF ENTERING THIS INTERIM ORDER:

A.     On the Petition Date, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio (the "**Bankruptcy Court**"). The Debtors are continuing in the management and possession of their business and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.     Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.     Sufficient and adequate notice of the Motion has been provided under the urgent circumstances present and based upon the notice sent to the Interim Noticed Parties (defined below), pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b), 364(c) and 364(d) of the Bankruptcy Code, and no further notice of, or interim or preliminary hearing on, the Motion or this Interim Order is necessary or required.

09-55159-mss     Doc 30     FILED 11/12/09     ENTERED 11/12/09 16:30:06     Page 3 of 35

D.     KeyBank National Association (in its capacity as lender under the DIP Credit Facility, and together with any other entities that may hereafter become a lender thereunder, the "**DIP Lender**") is willing to advance monies to the Debtors, and the Pre-Petition Lender and the Pre-Petition LC Issuer are willing to consent to the use of Cash Collateral, only upon the terms and conditions contained in this Interim Order.

E.     The Debtors are unable to obtain sufficient levels of unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code to maintain and conduct their businesses.

F.     The Debtors are unable to obtain the necessary financing as unsecured credit allowable under section 364(a), (b) or (c)(1) of the Bankruptcy Code or as secured credit pursuant only to section 364(c)(2) and (3).  Additionally, the Debtors are unable to procure the necessary financing on more favorable terms than those offered by the DIP Lender or provided in this Interim Order.

G.     The credit and financial accommodations to be extended under the DIP Credit Facility are being extended by the DIP Lender in good faith; the conditions required by the Pre-Petition Lender and the Pre-Petition LC Issuer in connection with the use of Cash Collateral are made in good faith; the Debtors, the DIP Lender, the Pre-Petition Lender and the Pre-Petition LC Issuer (collectively, the "**Lenders**") have negotiated the terms and conditions contained in this Interim Order in an arms' length, open and honest fashion; and the Lenders are entitled to the protection of section 364(e) of the Bankruptcy Code.

H.     It is in the best interests of the Debtors' creditors and estates that they be allowed to finance their operations under the terms and conditions set forth herein.

I.     Notice of the relief sought by the Motion, and the Interim Hearing with respect thereto, pursuant to Bankruptcy Rules 2002 and 4001(b), (c) and (d) and Bankruptcy

Code section 102(1), as required by Bankruptcy Code sections 363(b), 364(c) and (d), has been given to the following parties in interest: the United States Trustee; the DIP Lender, the Pre-Petition Lender, the Pre-Petition LC Issuer and Key Equipment Finance Inc. ("**KEF**") and their counsel, Squire, Sanders & Dempsey L.L.P.; the creditors holding the twenty (20) largest unsecured claims against the Debtors' estates on a consolidated basis; the Securities and Exchange Commission; the Internal Revenue Service; and all state and local taxing authorities concerning the Debtors (collectively, the "**Interim Noticed Parties**").

J.    After consultation with their counsel and financial advisors, but without prejudice to the rights of parties in interest as set forth in paragraph 13 below, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs J(i) through J(v) hereof shall be referred to herein as the "**Debtors' Stipulations**"):

　　　　(i)    **Pre-Petition Obligations.**

　　　　　　(a)    Obligations under the Pre-Petition MDE Credit Agreement.  As of the Petition Date, the Debtors were party to a certain Amended and Restated Credit and Security Agreement, dated as of June 19, 2006 (as more particularly defined in the Ratification Agreement, the "**Pre-Petition MDE Credit Agreement**"), among the Debtors, as borrowers (the "**Borrowers**"), and KeyBank National Association, a national banking association ("**KeyBank**"), as lender (the "**Pre-Petition Lender**") and as letter of credit issuer (the "**Pre-Petition LC Issuer**").  Pursuant to the Pre-Petition MDE Credit Agreement, the Pre-Petition Lender provided MDE with a revolving credit facility (the "**Revolving Facility**") in the aggregate principal amount of up to $10,500,000 *plus* the current face amount of the Existing Letter of Credit (as defined in the Pre-Petition MDE Credit Agreement), as the same shall amortize on a quarterly basis in accordance with its terms.  As of November 9, 2009, the outstanding unpaid principal balance under the Revolving Facility was at least $6,588,696.89.

Also pursuant to the Pre-Petition MDE Credit Agreement, the Pre-Petition LC Issuer agreed to issue letters of credit for the account of the Borrowers in an amount up to the LC Sublimit (as defined in the Pre-Petition MDE Credit Agreement). In connection with the Conditional Forbearance Agreement and Amendment, dated as of February 11, 2009 (as amended, restated, modified or supplemented from time to time, the "**Forbearance Agreement**") among Recycling, MDE, Day Family Enterprises, LLC, a non-debtor affiliate of the Debtors ("**DFE**"), the Pre-Petition Lender, the Pre-Petition LC Issuer and Michael F. Day, an individual ("**Mr. Day**"), the LC Sublimit was reduced to the sum of $0.00 *plus* the face amount of the Existing Letter of Credit as the same shall amortize on a quarterly basis in accordance with its terms. The Existing Letter of Credit was issued by KeyBank and is a "Letter of Credit" under the Pre-Petition MDE Credit Agreement. As of November 9, 2009, the outstanding balance of the Existing Letter of Credit was $571,726.03. Also pursuant to the Pre-Petition MDE Credit Agreement, the Pre-Petition Lender provided MDE with a term loan (the "**Term Facility**") on June 19, 2006 in the amount of $1,500,000. As of November 9, 2009, the outstanding unpaid principal balance under the Term Facility was at least $841,145.75. Also pursuant to the Pre-Petition MDE Credit Agreement, the Pre-Petition Lender provided Recycling with a term loan (the "**Term B Facility**") on August 27, 2007 in the amount of $1,650,000. As of November 9, 2009, the outstanding unpaid principal balance under the Term B Facility was at least $1,306,250.00. Pursuant to the Pre-Petition MDE Credit Agreement, each of MDE and Recycling provided a borrower guaranty wherein each Borrower agreed to guaranty the obligations under the Pre-Petition MDE Credit Agreement of each other Borrower to the Pre-Petition Lender and the Pre-Petition LC Issuer.

      (b)    <u>Pre-Petition Obligations under the Master Lease</u>. As of the Petition Date, MDE was party to a certain Master Equipment Lease Agreement, dated as of

April 7, 2000 (as amended, restated, modified or supplemented from time to time, the "**Master Lease**"), between KEF (fka KeyCorp Leasing, a division of Key Corporate Capital Inc.) and MDE, which has been subsequently amended by agreements between MDE and KEF, or other leasing affiliates of KeyBank. Pursuant to the Master Lease, KEF leases to MDE certain equipment, which is set forth on various equipment schedules to the Master Lease. Any and all obligations owed to or any other leasing affiliate of KeyBank (collectively, the "**Equipment Lessors**"), are included in the "Obligations" under the Pre-Petition MDE Credit Agreement. As of November 9, 2009, the amount owing under the Master Lease was at least $971,791.76 (being the "payoff" amount through December 1, 2009).

(c)     Pre-Petition Obligations under the Guaranty of the 2004 DFE Business Loan Agreement.     As of the Petition Date, DFE was party to a certain Business Loan Agreement, dated as of July 23, 2004 (as amended, restated, modified or supplemented from time to time, the "**Pre-Petition 2004 BLA**") between DFE, as borrower, and the Pre-Petition Lender, which provided for the renewal of a certain Business Loan Agreement, dated as of December 15, 1998 between DFE, as borrower, and the Pre-Petition Lender. Pursuant to the Pre-Petition 2004 BLA, the Pre-Petition Lender provided DFE with a term loan facility in the aggregate principal amount of $1,500,000. Pursuant to that certain Commercial Guaranty, dated as of July 23, 2004 (as amended, restated, modified or supplemented from time to time, the "**MDE 2004 Guaranty**") between MDE and the Pre-Petition Lender, MDE has guaranteed the "Indebtedness" (as set forth in the MDE 2004 Guaranty) of DFE to the Pre-Petition Lender. As of November 9, 2009, DFE was indebted to the Pre-Petition Lender under the Pre-Petition 2004 BLA in the aggregate amount of not less than $185,429.22 plus interest, costs, expenses and other charges thereon.

(d)  Pre-Petition Obligations under Interest Rate Swaps. Prior to the Petition Date, MDE and the Pre-Petition Lender entered into certain interest rate swaps (the "**Swaps**").  Depending on market interest rates at the time of any termination of the Swaps, the Debtors may be liable to the Pre-Petition Lender for termination fees under the Swaps.  Such fees and any other amounts owing to the Pre-Petition Lender under the Swaps constitute Obligations under the Pre-Petition MDE Credit Agreement.

(ii)  **Security**.  Pursuant to the Pre-Petition MDE Credit Agreement, MDE and Recycling each granted to the Pre-Petition Lender, for the benefit of itself and the Pre-Petition LC Issuer, to secure the prompt payment and performance of the Obligations (as defined in the Pre-Petition MDE Credit Agreement), a lien on and continuing security interest in the Collateral as defined in the Pre-Petition MDE Credit Agreement.  Pursuant to that certain Open-End Mortgage Deed, Second Amended and Restated Open-End Mortgage Deed, Security Agreement and Fixture Filing, dated as of August 27, 2007 (the "**Pre-Petition Mortgage**"), from MDE and DFE in favor of the Pre-Petition Lender, MDE and DFE have mortgaged to the Pre-Petition Lender all of their respective right, title and interest in and to the Mortgaged Property (as defined in the Pre-Petition Mortgage).  The Pre-Petition Mortgage secures the performance of the covenants and agreements contained in the Pre-Petition Mortgage, the Pre-Petition MDE Credit Agreement and the other Loan Documents (as defined in the Pre-Petition MDE Credit Agreement) and secures the payment when due of (i) the obligations of the Borrowers under the Pre-Petition MDE Credit Agreement and the Notes (as defined in the Pre-Petition MDE Credit Agreement), together with applicable interest, (ii) DFE's obligations under the DFE Guaranty (as defined herein), (iii) all amounts expended or advanced by the Pre-Petition Lender pursuant to any Loan Document and (iv) all unpaid advances made by the Pre-Petition Lender, with respect to the Mortgaged Property, for the payment of taxes, assessments, insurance premiums and all

other liabilities and indebtedness owing by Borrowers to the Pre-Petition Lender; *provided* that the total unpaid principal amount of loan indebtedness secured by the Pre-Petition Mortgage cannot exceed $16,552,061.64. Pursuant to that certain Commercial Security Agreement, dated as of December 15, 1998 (as amended, restated, modified or supplemented from time to time, the "**MDE 1998 Security Agreement**"), among MDE, DFE and the Pre-Petition Lender, to secure the Indebtedness (as defined in the MDE 1998 Security Agreement), MDE granted to the Pre-Petition Lender a lien on and security interest in the Collateral as defined in the MDE 1998 Security Agreement. The liens, security interests and/or mortgages granted by the Borrowers to the Pre-Petition Lender and/or the Pre-Petition LC Issuer prior to Petition Date, including, without limitation the liens, security interests and mortgages granted in the Pre-Petition MDE Credit Agreement and the Pre-Petition Mortgage, are referred to herein as the "**Pre-Petition Liens**."

(iii) **Non-Debtor Guaranties**. Pursuant to an Over-Advance Guaranty Agreement, dated as of February 11, 2009 (as amended, restated, modified or supplemented from time to time, the "**Over-Advance Guaranty Agreement**") executed by Mr. Day in connection with the Forbearance Agreement, Mr. Day agreed to guaranty the full and prompt payment when due of the Outstanding Over-Advance Amount and certain other obligations comprising the Day Guaranteed Obligations (as each such term is defined in the Over-Advance Guaranty Agreement); *provided* that Mr. Day's maximum liability under the Over-Advance Guaranty Agreement cannot exceed $500,000.00. Pursuant to that certain Guaranty Agreement, dated as of June 19, 2006 (as amended, restated, modified or supplemented from time to time, the "**DFE Guaranty**"), between DFE and KeyBank as Pre-Petition Lender and Pre-Petition LC Issuer, DFE has guaranteed the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all obligations of the Borrower to the Pre-Petition Lender and Pre-Petition LC

Issuer, of every type and description, including, but not limited to, the Borrower's Obligations under the Pre-Petition MDE Credit Agreement and the Loan Documents.

(iv) **Validity and Priority of Pre-Petition Liens and Pre-Petition Obligations**. The Pre-Petition Liens are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or otherwise. The Debtors' indebtedness and other obligations, as of the Petition Date, to the Pre-Petition Lender, the Pre-Petition LC Issuer and/or the Equipment Lessors, including, without limitation, the Obligations under the Pre-Petition MDE Credit Agreement, MDE's obligations under the MDE 2004 Guaranty, and the obligations under the Loan Documents (as defined in the Pre-Petition MDE Credit Agreement) (collectively, and as more particularly defined in the Ratification Agreement, the "**Pre-Petition Obligations**"), constitute legal, valid, binding and non-avoidable obligations of the Debtors that, except for the stay of enforcement arising from section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the Loan Documents, as defined in the Pre-Petition MDE Credit Agreement and including the Forbearance Agreement, the Master Lease and amendments and schedules thereto, the MDE 2004 Guaranty, the Pre-Petition Mortgage and the MDE 1998 Security Agreement and the other agreements, documents and instruments executed and delivered in connection therewith (collectively, and as more particularly defined in the Ratification Agreement, the "**Pre-Petition Loan Documents**"). No offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any of the Pre-Petition Obligations exist, and no portion of the Pre-Petition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or otherwise. The Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, claims under chapter 5 of the Bankruptcy Code, against the Pre-

Petition Lender, the Pre-Petition LC Issuer and/or the Equipment Lessors, and/or their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees.

(v)     **Cash Collateral**.   All of the Debtors' cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents, whether original collateral or proceeds, products, rents or profits of other Pre-Petition Collateral or the proceeds thereof (the "**Cash Collateral**"), constitute "cash collateral," as such term is defined in Bankruptcy Code section 363(a), of the Pre-Petition Lender and the Pre-Petition LC Issuer.

K.     The Debtors represent as follows:

(i)     that without the use of Cash Collateral and the financing proposed by the Motion, the Debtors will not have the funds necessary to pay post-petition payroll, payroll taxes, trade vendors, suppliers, overhead and other expenses necessary for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and properties.  The Debtors have requested that pursuant to this Interim Order, the Pre-Petition Lender make available to the Debtors Cash Collateral, and pursuant to the DIP Credit Facility, the DIP Lender make loans and advances and provide other financial accommodations to the Debtors, to be used by the Debtors solely for the purposes set forth in the Budget.  The ability of the Debtors to continue their business and reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing from the Pre-Petition Lender and the DIP Lender.  The Pre-Petition Lender is willing to make the Cash Collateral available, and the DIP Lender is willing to make such loans and advances and provide such other financial accommodations on a secured basis, as more particularly described herein, solely in accordance with this Interim Order and pursuant to the terms and conditions of the DIP Credit Facility. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the

continued operation of the Debtors' business, the management and preservation of their assets and properties, and is in the best interests of the Debtors, their estates and creditors;

(ii)    that they are unable to obtain the necessary financing as unsecured credit allowable under section 364(a), (b) or (c)(1) of the Bankruptcy Code or as secured credit pursuant only to section 364(c)(2) and (3), and that they are unable to procure the necessary financing on more favorable terms than those offered by the DIP Lender or provided in this Interim Order;

(iii)    that the terms and conditions contained in this Interim Order governing the use of Cash Collateral and the DIP Credit Facility, pursuant to which the post-petition loans, advances, and other credit and financial accommodations will be made or provided to the Debtors by the DIP Lender, have been negotiated honestly, openly and at arms' length and in good faith, and, thus, in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The Debtors further represent that the DIP Lender is extending financing to the Debtors in good faith and the DIP Lender is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code; and

(iv)    that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to their estates.

L.    Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion, and the immediate entry of this Interim Order, and such entry is necessary to prevent irreparable harm to the Debtors' estates. To the extent any objections were made to the relief sought in the Motion and the entry of this Interim Order (and not withdrawn prior to the entry of this Interim Order) such objections are hereby overruled.

09-55159-mss    Doc 30    FILED 11/12/09    ENTERED 11/12/09 16:30:06    Page 12 of 35

M.     As of the date hereof, the Office of the United States Trustee has not appointed an official committee of unsecured creditors (a "**Committee**") under section 1102 of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     Motion Granted.  The Motion is GRANTED as set forth herein.

2.     Authorization to Obtain Debtor-in-Possession Financing.  The Debtors are hereby authorized and empowered to immediately borrow and obtain Revolving Credit Advances (as defined in the DIP Loan Agreement) and to incur indebtedness and obligations to the DIP Lender pursuant to the terms and conditions of this Interim Order and the Ratification and Amendment Agreement, dated as of November 9, 2009, by and among the Lenders and the Debtors (the "**Ratification Agreement**", and together with the Pre-Petition MDE Credit Agreement, and as more particularly defined in the Ratification Agreement, the "**DIP Loan Agreement**").  The Debtors are hereby authorized and directed to enter into, execute, deliver, perform and comply with all of the terms, conditions and covenants of the DIP Loan Agreement, the other Pre-Petition Loan Documents, as ratified and amended by the Ratification Agreement, and all other agreements, documents and instruments executed and/or delivered in connection with or related to the DIP Loan Agreement and the Pre-Petition Loan Documents; *provided, however,* that to the extent that the Pre-Petition Loan Documents require the Debtors to make payments on account of obligations that arose prior to the Petition Date (other than (i) payments in respect of the Pre-Petition Obligations in accordance with the DIP Loan Agreement, and (ii) payments that the Debtors are obligated to make by law, taking into account applicable bankruptcy law) in order to be in compliance therewith, the Debtors are not required to make any such payments and shall not make any such payments absent an order of this Court permitting such payments.  The DIP Loan Agreement and each term, condition and covenant set forth therein are approved and shall

be deemed to be incorporated into the terms and conditions of this Interim Order. All of such terms, conditions, and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors and the DIP Lender and of the Debtors' assumption and adoption of all of the terms, conditions, and covenants of the DIP Loan Agreement for all purposes, including, without limitation, to the extent applicable, the payment of all Pre-Petition Obligations and Post-Petition Obligations (as defined herein) arising thereunder, including, without limitation, all principal, interest, fees and expenses, including, without limitation, all of the DIP Lender's reasonable attorneys' fees and legal expenses, as more fully set forth in the DIP Loan Agreement.

3. <u>Amendment</u>. Subject to the terms and conditions of the DIP Loan Agreement and the other DIP Financing Documents, the Lenders and the Debtors may amend, modify, supplement, or waive any provision of the DIP Loan Agreement (an "**Amendment**") without further approval or order of the Court so long as (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean any Amendment that operates to increase the rate of interest other than as currently provided in the DIP Loan Agreement, adds specific new events of default or enlarges the nature and extent of default remedies available to the Lenders following an event of default, or otherwise modifies any terms or conditions in any DIP Financing Document in a manner materially less favorable to the Debtors and in the good faith judgment of the Lenders and Debtors), (ii) the Debtors provide at least three business days' prior written notice of the Amendment (the "**Amendment Notice**") to the United States Trustee and counsel for any Committee and file the Amendment Notice with the Court, and (iii) no objection to the Amendment is filed with the Court within two (2) business days after the date the Amendment Notice is filed with the Court. Any material Amendment to the DIP Loan Agreement must be approved by the Court to be effective.

4.  <u>Payment of Pre-Petition Debt</u>.  The Debtors are authorized to pay the Pre-Petition Lender and the Pre-Petition LC Issuer on account of the Pre-Petition Obligations in accordance with the DIP Financing Documents and the provisions of this paragraph.  The Debtors are authorized and directed to make all payments and transfers of property to the Lenders as provided, permitted, or required under the DIP Financing Documents, which payments and transfers shall not be avoidable or recoverable from the Lenders or give rise to any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law, or otherwise, unless such payments or transfers are on account of Pre-Petition Obligations and successfully challenged in accordance with paragraph 13 below; *provided, however* that the roll-up of the Pre-Petition Obligations as authorized under this Interim Order shall not, in and of itself, create a basis upon which a claim, cause of action or objection may be made under paragraph 13 hereof or otherwise.  The Lenders shall apply the proceeds of the Collateral, including all net proceeds received by the Debtors or the Lenders at or after the closing of the 363 Sale Transaction (as defined in Exhibit B hereto) (the "**363 Sale Proceeds**"), or any other amounts or payments received by the Lenders in respect of the Obligations in accordance with the DIP Financing Documents, including, without limitation, applying all payments, proceeds and other amounts first to the Pre-Petition Obligations, until such Pre-Petition Obligations are indefeasibly paid in full and completely satisfied, and then to the Post-Petition Obligations.  Without limiting the generality of the foregoing, the Debtors are authorized and directed, without further order of this Court, to pay or reimburse the Lenders for all present and future costs and expenses, including, without limitation, all reasonable professional fees and reasonable legal expenses, paid or incurred by the Lenders in connection with the financing transactions as provided in this Interim Order and the DIP Financing Documents, all of which shall be and are

~14~

included as part of the principal amount of the Obligations, and shall be secured by the Collateral.

5. <u>Continuation of Pre-Petition Procedures</u>. All pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, and delivery of property to the Lenders, and the funding pursuant to the DIP Financing Documents, are hereby approved and shall continue without interruption after the commencement of the Cases.

6. <u>Authorization to Use Cash Collateral</u>. The Debtors are hereby authorized to use Cash Collateral, in accordance with the terms and conditions of this Interim Order, until the occurrence of the Maturity Date (as defined in the Ratification Agreement), or upon the occurrence of a Termination Event and the giving of the Remedies Notice (each as defined herein), subject to the provisions of paragraph 19(b) below.

7. <u>Budget Limitations on Revolving Credit Advances and Cash Collateral Usage</u>. Revolving Credit Advances and Cash Collateral shall be used only to pay those expenditures identified in the Budget, in amounts not to exceed the amounts specified in Section 11.2(l) of the DIP Loan Agreement. Any extension or other modification of the Budget shall be subject to the prior written approval of the Lenders.

8. <u>DIP Lender's Superpriority Claim</u>. For any and all obligations of the Debtors to the DIP Lender under and pursuant to the DIP Credit Facility (as more particularly defined in the Ratification Agreement, the "**Post-Petition Obligations**"), and in addition to the rights granted below, subject to the Carve-Out, the DIP Lender is hereby granted an allowed superpriority administrative claim in accordance with section 364(c)(1) of the Bankruptcy Code, having a priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors (including, but not limited to, the Pre-Petition Obligations, which for avoidance of doubt are not entitled to treatment as an ordinary or superpriority administrative claim except to the

extent of any Adequate Protection Claim, as defined below, for diminution in value or as adequate protection for priming by the DIP Credit Facility), now in existence or hereafter incurred by the Debtors and over any and all administrative expenses or priority claims of any kind including as specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b) (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, whether arising in the Cases or in any superseding chapter 7 cases concerning the Debtors (**"Successor Cases"**).

9. <u>Post-Petition Lien</u>. Pursuant to Bankruptcy Code sections 362, 363(e) and 364(c) and (d), as security for the prompt payment and performance of any and all Obligations incurred by the Debtors to the Lenders, of whatever nature or description, the Debtors are hereby authorized to grant to the Lenders, and upon the entry of this Interim Order shall be deemed hereby to have granted to the Lenders, effective as of the Petition Date, valid, binding, enforceable and perfected first priority liens, mortgages and security interests, superior to the liens, mortgages, security interests or other interests or rights of all other creditors of the Debtors' estates (including, but not limited to, the Pre-Petition Liens) on property owned or leased by the Debtors, in and upon all of the Pre-Petition Collateral and all of the Post-Petition Collateral (as defined in the Ratification Agreement), subject only to the Carve-Out. The Pre-Petition Collateral and the Post-Petition Collateral are collectively referred to herein as the "**Collateral**". It is understood that the Debtors may seek at the Final Hearing (as defined herein) to include as part of the Post-Petition Collateral, to secure the Post-Petition Obligations only, bankruptcy-related causes of action and recoveries thereunder, including, but not limited to, all causes of action under chapter 5 of the Bankruptcy Code and recoveries thereunder, including section 506(c), sections 544 through 550 and section 553 or other applicable law).

10. Adequate Protection of Pre-Petition Lender's and Pre-Petition LC Issuer's Interests. As adequate protection for any post-petition diminution in value of the Pre-Petition Lender's or Pre-Petition LC Issuer's interests in the Pre-Petition Collateral, including without limitation for any diminution in value resulting from the use of Cash Collateral, the use, sale or lease of any other Pre-Petition Collateral, subordination to the Carve-Out, or the imposition of the automatic stay, the Pre-Petition Lender and Pre-Petition LC Issuer are hereby granted post-petition claims (the "**Adequate Protection Claim**") against the Debtors' estates. In order to secure the Adequate Protection Claim, the Pre-Petition Lender and Pre-Petition LC Issuer are hereby granted a lien, mortgage and security interest (the "**Replacement Lien**") in and upon the Collateral and all proceeds thereof, subject only to (i) the Carve-Out, (ii) the liens granted to the Lenders under paragraph 9 hereof, and (iii) the liens and security interests existing on the Petition Date in favor of the Pre-Petition Lender and Pre-Petition LC Issuer. To further provide adequate protection for the Adequate Protection Claim, the Pre-Petition Lender and Pre-Petition LC Issuer are granted an allowed superpriority administrative claim in accordance with section 507(b) of the Bankruptcy Code having a priority in right of payment over any and all administrative expenses or priority claims of any kind including as specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b) (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, whether arising in the Cases or any Successor Cases, but subject to the Carve-Out and the superpriority administrative claim granted to the DIP Lender. As further adequate protection, the Debtors are hereby directed to transfer to the Lenders the 363 Sale Proceeds, upon the latter of (a) a further order of the Court so directing, and (b) the Challenge Period Termination Date (as defined below).

11. Carve-Out. Notwithstanding any contrary provision of this Interim Order, the liens, mortgages and security interests and superpriority claims granted to the Lenders, and the Replacement Lien, shall be subject and subordinate to a carve-out consisting of: (a) up to $485,000 in the aggregate for the allowed fees and expenses, whether incurred before or after the occurrence of the Maturity Date or a Termination Event, of the following professionals of the Debtors retained pursuant to Bankruptcy Code sections 327 or 328, consisting of: (i) $350,000 to Brouse McDowell, proposed counsel to the Debtors (ii) $100,000 to Phoenix Management Services, proposed financial advisor to the Debtors, and (iii) $35,000 to SS&G Financial Services, proposed accountants for the Debtor; (b) the amount of any unpaid fee or expense reimbursement owing to Polymer Transaction Advisors (**"PTA"**) in accordance with any order of this Court approving PTA's retention, *provided, however,* that the carve-out in favor of PTA is conditioned in all respects on the closing of the 363 Sale Transaction; (c) up to $35,000 for the allowed fees and expenses of counsel and any other professionals of any Committee retained pursuant to Bankruptcy Code sections 1103 or 328; (d) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); and (e) any fees payable to the Clerk of the Bankruptcy Court and any agent thereof (collectively, the "**Carve-Out**"), subject to the right of the DIP Lender, the Pre-Petition Lender, the Pre-Petition LC Issuer, the United States Trustee, and any other party in interest to object to the award of any such fees and expenses. No portion of the Carve-Out may be used to litigate, object, contest or challenge in any manner or raise any defenses to the debt or collateral position of the Lenders, whether by challenging the validity, extent, amount, perfection, priority or enforceability of the Pre-Petition Loan Documents, the Obligations or the Lenders' liens, security interests or mortgages, or any other rights or interests or Replacement Liens with respect thereto or any other rights or interests of the Lenders, or by seeking to subordinate or recharacterize the Pre-Petition Obligations or to disallow any claim,

09-55159-mss    Doc 30    FILED 11/12/09    ENTERED 11/12/09 16:30:06    Page 19 of 35

mortgage, security interest, lien, or Replacement Lien, or by asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Lenders or any of their officers, directors, agents or employees. The Carve-Out shall not be used in connection with (i) preventing, hindering or delaying the Lenders' enforcement or realization upon the Collateral in accordance with this Interim Order, (ii) using or seeking to use Cash Collateral other than in accordance with this Interim Order or selling or otherwise disposing of the Collateral without the consent of the Lenders, (iii) using or seeking to use any insurance proceeds related to the Collateral without the consent of the Lenders; or (iv) obtaining credit or incurring debt secured by a lien senior to or *pari passu* with the Lenders' liens or the Replacement Liens.

12. <u>No Surcharge or Marshaling</u>. Subject to approval at the Final Hearing, neither the Collateral nor the Lenders shall be subject to surcharge, pursuant to section 506(c) of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest without the prior written consent of the Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any party, including but not limited to funding of the Debtors' ongoing operations by the Lenders. Subject to approval at the Final Hearing, the Lenders shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

13. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. Nothing in this Interim Order shall prejudice the rights of any party in interest other than the Debtors to object to or challenge the Debtors' Stipulations; *provided however,* that unless such other party in interest obtains proper standing, except that any Committee shall be deemed to have proper standing for this purpose, and commences a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against

the Pre-Petition Lender or the Pre-Petition LC Issuer in the nature of a setoff, counterclaim or defense to the Pre-Petition Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Pre-Petition Lender) within 55 days after the entry of this Interim Order (the **"Challenge Period"**, and the date that is the next calendar day after the termination of the Challenge Period, in the event that no contested matter or adversary proceeding is commenced during the Challenge Period shall be referred to as the **"Challenge Period Termination Date"**), without prejudice to the right of any Committee to seek an extension of the Challenge Period, then, upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any chapter 11 or chapter 7 trustee appointed in the Cases or in any Successor Cases) shall be deemed to be forever waived, barred and discharged and the Debtors' Stipulations shall be binding on all persons, entities, creditors, interest holders and parties in interest in the Cases or any Successor Cases, and upon the Challenge Termination Period the Pre-Petition Obligations shall be deemed to be fully and finally allowed under the Bankruptcy Code for all purposes in connection with the Cases and any Successor Cases. Only those parties in interest that have properly and with requisite standing initiated an adversary proceeding or contested matter challenging the Debtors' Stipulations prior to the Challenge Period Termination Date shall be permitted to prosecute such adversary proceeding or contested matter, except that any Committee shall be deemed to have proper standing for this purpose.

14. <u>Limitation on Other Authorization for Cash Collateral Use, Obtaining Credit, Granting of Liens</u>. So long as there are any Post-Petition Obligations outstanding to the DIP Lender under the DIP Credit Facility and until the Adequate Protection Claim is satisfied indefeasibly in full, unless the Lenders shall have given their prior written consent, or this Court enters an order, upon proper notice to the Lenders and after hearing, requiring that all the

Debtors' obligations to the DIP Lender and the Adequate Protection Claim be immediately satisfied in full, the Debtors shall neither seek any further orders in the Cases, nor support any applications therefor, which authorize: (a) under Bankruptcy Code section 363, the use of Cash Collateral or the sale, use, or lease, other than in the ordinary course of business, of other property of the Debtors in which the DIP Lender, the Pre-Petition Lender or the Pre-Petition LC Issuer have an interest; or (b) the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code section 364(c) or (d), or any other grant of rights against the Debtors and/or their estates, secured by a lien, mortgage or security interest in the Pre-Petition Collateral or the Post-Petition Collateral or entitled to priority administrative status which is equal or superior to that granted to the DIP Lender, the Pre-Petition Lender or the Pre-Petition LC Issuer (with respect to the Replacement Liens) herein.

15. <u>Insurance; Governmental Charges</u>. The Debtors, at their expense, shall (a) continue to at all times keep the Collateral fully insured against all loss, peril and hazard and make the DIP Lender and the Pre-Petition Lender co-insured and loss payee as their interests appear under such policies, and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to the Collateral, whether or not the Debtors are obligated to do so under the Pre-Petition Loan Documents, and will provide the DIP Lender or the Pre-Petition Lender with proof thereof upon written demand and will give the DIP Lender and the Pre-Petition Lender access to their records in this regard.

16. <u>Modification of Automatic Stay</u>. The automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit (a) the Debtors to implement the terms of the DIP Credit Facility, (b) the Debtors to grant the Replacement Liens as adequate protection to the Pre-Petition Lender and the Pre-Petition LC Issuer, and (c) the Debtors to create, and the DIP Lender or the Pre-Petition Lender or the Pre-Petition LC Issuer, as the case may be, to perfect, any and

all liens, mortgagees and security interests granted to them hereunder; *provided, however,* that neither the DIP Lender, the Pre-Petition Lender nor the Pre-Petition LC Issuer shall be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien, mortgage or security interest granted by this Interim Order or take any other action to perfect such liens, mortgages and security interests, and such liens, mortgages and security interests are hereby deemed perfected; *provided, however,* that if the DIP Lender, the Pre-Petition Lender or the Pre-Petition LC Issuer, as the case may be, shall, in its sole discretion, elect for any reason to file, record or serve any such financing statements or other documents with respect to such liens and security interests, the Debtors shall execute the same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date required to implement the priority of such liens and security interests as provided in this Interim Order.

17. <u>No Impairment by Plan</u>.  The time of payment of any and all Post-Petition Obligations of the Debtors arising out of or incurred pursuant to the DIP Credit Facility shall not be altered, extended or impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which may hereafter be entered.

18. <u>Termination Events</u>.  The occurrence of any one or more of the following events shall constitute a "**Termination Event**" under this Interim Order:

(i)  any of the Cases is either dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

(ii)  a trustee or an examiner with expanded powers is appointed in any of the Cases;

(iii)    any plan(s) of reorganization of the Debtors is filed which does not provide for the payment in full in cash of the Post-Petition Obligations upon the effective date of the plan(s);

(iv)    the Debtors cease operation of their business or take any material action for the purpose of effecting such cessation without the prior written consent of the Lenders;

(v)    this Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially and adversely affect the rights of the Lenders hereunder or shall materially and adversely affect the priority of any or all of the Lenders' claims, liens or security interests and which is not acceptable to the Lenders;

(vi)    the final order approving debtor-in-possession financing from the DIP Lender and/or the use of Cash Collateral, which final order shall be in form and substance satisfactory in all respects to the Lenders (the "**Final Order**"), is not entered on or before forty-five (45) days after the Petition Date;

(vii)    the Debtors' failure to comply with or perform, in any material respect, the terms and provisions of this Interim Order or any DIP Financing Document, including, without limitation, using Revolving Credit Advances or Cash Collateral other than in accordance with the provisions of paragraph 7 hereof concerning the Budget;

(viii)    any sale or other disposition of Collateral or Cash Collateral is approved without the consent of the DIP Lender, the Pre-Petition Lender or the Pre-Petition LC Issuer;

(ix)    any superpriority claim or lien equal or superior in priority to that granted to the DIP Lender, the Pre-Petition Lender or the Pre-Petition LC Issuer pursuant to this Interim Order or permitted hereunder shall be granted;

(x)    the automatic stay of Bankruptcy Code section 362 is lifted so as to allow a party other than the Lenders to proceed against any material asset of the Debtors;

~23~

(xi)    the Debtors shall have filed, or the Court shall have entered an order confirming, a plan of reorganization, which plan is not in form and substance acceptable to the DIP Lender, the Pre-Petition Lender or the Pre-Petition LC Issuer;

(xii)    the Milestones set forth in the attached Exhibit B shall not have been met within the period specified therefor, as the same may be extended in the sole discretion of the Lenders; or

(xiii)    the Asset Purchase Agreement (as defined in the attached Exhibit B) shall have been terminated other than by reason of the Court's approval of a 363 Sale Transaction to a purchaser other than the purchaser under the Asset Purchase Agreement.

19.    <u>Remedies Upon Maturity/Termination</u>.

Upon the occurrence of the Maturity Date, or upon the occurrence of a Termination Event and the giving of the Remedies Notice (as defined below):

(a)    any and all Post-Petition Obligations shall be immediately due and payable, any obligation of the DIP Lender to make Revolving Credit Advances or other financial accommodations under the DIP Credit Facility shall terminate, and the Debtors' authorization to use Cash Collateral, including any amounts in any and all deposit accounts maintained by the Debtors, shall terminate (subject to the provisions of paragraph 19(b) hereof);

(b)    the Debtors shall immediately segregate all Cash Collateral, and shall not be permitted to use Cash Collateral unless the Lenders shall have given their prior written consent or the Court shall have entered an order, after a hearing upon notice to the Lenders, authorizing such use; and

(c)    the Lenders shall have the right, free of the restrictions of Bankruptcy Code section 362, (i) to take immediate reasonable action to protect and preserve the Collateral, and (ii) after giving five (5) business days' prior written notice of a Termination Event to the

Debtors, the Office of the United States Trustee, and the Committee (the "**Remedies Notice**"), to exercise their rights and remedies pursuant to the DIP Financing Documents, the Pre-Petition Loan Documents and/or applicable law, including, without limitation, to foreclose on all or any portion of the Collateral, collect accounts receivable and other monies owing to the Debtors and apply the proceeds thereof in satisfaction of the Post-Petition Obligations and the Pre-Petition Obligations unless, prior to the passage of such five (5) business days, the Court shall have entered an order, after a hearing upon notice to the Lenders, limiting or restraining the Lenders from exercising any or all such rights and remedies.

20.     <u>No Limitation on Further Relief</u>.   Nothing in this Interim Order shall limit the rights of the Lenders to seek further relief (including additional adequate protection), or modification or termination of the automatic stay in accordance with Bankruptcy Code section 362(d).

21.     <u>No Limitation on Assignment of Rights</u>.  Nothing in this Interim Order shall limit the rights of the Lenders to assign any or all of their rights, claims and obligations under the DIP Financing Documents or the Pre-Petition Loan Documents (as applicable).

22.     <u>Reporting Obligations</u>.    Without limiting the Debtors' reporting or other obligations under the DIP Financing Documents or the Pre-Petition Loan Documents:

(a)     the Debtors shall deliver weekly to the Lenders, no later than the close of business each Wednesday, a breakdown by line-item, in the same format as the Budget, of the Debtors' actual cash receipts and disbursements for the immediately preceding week, and cumulatively for all preceding weeks after the Petition Date, which shows such actual receipts and disbursements for the applicable period compared to such receipts and disbursements for the applicable period as projected in the Budget, such report to be certified by the chief financial

09-55159-mss    Doc 30    FILED 11/12/09    ENTERED 11/12/09 16:30:06    Page 26 of 35

officer of the Debtors and Richard J. Szekelyi of Phoenix Management Services to be accurate to the best of their knowledge, information and belief;

   (b) the Debtors shall deliver to the Lenders, no later than twenty-five (25) calendar days after the end of each month a copy of the Debtors' monthly operating report(s) for such month as filed with the Court and with the office of the United States Trustee;

   (c) the Debtors shall deliver to the Lenders, within five (5) calendar days of the Debtors' receipt thereof, copies of all audited financial statements which reflect the Debtors' assets and liabilities and results of operations; and

   (d) the Debtors shall permit representatives, agents and/or employees of the Lenders to visit, inspect and have reasonable access to the Debtors' premises and books and records, and shall cooperate and consult with, and provide to such representatives, agents and/or employees all such information as they may reasonably request, and the Lenders shall have the right to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtors, and the Debtors shall make all of same available to the Lenders and their representatives for such purposes.

  23. <u>Books and Records</u>.  The Debtors are directed to keep their books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtors' business.

  24. <u>Good Faith</u>.  Pursuant to, and to the extent of, the provisions of Bankruptcy Code section 364(e), the validity of the Post-Petition Obligations and the validity or priority of the liens, mortgages and security interests authorized or granted by this Interim Order shall be binding on the Debtors, their estates and their successors and assigns even if this Interim Order is reversed or modified on appeal.

25.     Additional Documents.  The Debtors are hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of their obligations hereunder and under the DIP Credit Facility.

26.     Immediate Effect.  As permitted by Bankruptcy Rule 6004(h), the Court hereby orders that this Interim Order shall become effective immediately.

27.     Survival After Confirmation, Conversion or Dismissal.  The provisions of this Interim Order and any actions taken pursuant thereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting the Cases from chapter 11 to chapter 7 of the Bankruptcy Code; *provided, further,* that the terms and provisions of this Interim Order, as well as the liens, mortgages and security interests granted thereunder, shall continue in the Cases or any Successor Cases and such liens, mortgages and security interests and the Adequate Protection Claim shall maintain their priority as provided by this Interim Order.

28.     No Limitation of Modification of Order.  Nothing in this Interim Order shall limit the Lenders' rights to seek modification of this Interim Order.

29.     No Prejudice of Rights Against Third Parties.  Nothing in this Interim Order shall in any way prejudice or compromise any rights that the Lenders may have against parties other than the Debtors.

30.     Service of this Order.  Within three (3) Business Days after the entry of this Interim Order, the Debtors shall serve a copy on: (a) the Office of the United States Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) all state and local taxing authorities concerning the Debtors; (e) counsel to any Committee, if any; (f) the creditors holding the twenty (20) largest unsecured claims against the Debtors' estates on a consolidated basis; and (g) counsel to the Lenders.

09-55159-mss    Doc 30    FILED 11/12/09    ENTERED 11/12/09 16:30:06    Page 28 of 35

31.     Objection.  Any objection to the relief requested in the Motion on a permanent basis must: (a) be filed in accordance with the Court's CM/ECF procedures or in writing with the Clerk of the Court, at 455 U.S. Courthouse, 2 South Main Street, Akron, OH 44308, by 4:00 p.m. (Eastern Time) no later than November 23, 2009 by any party other than the Committee and no later than Noon on November 25, 2009 by the Committee (and the Committee's objection may be a notice pleading) (the "**Objection Deadline**"), and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) the United States Trustee, Howard M. Metzenbaum U.S. Courthouse, 201 Superior Ave., East - Suite 441, Cleveland, OH 44114; (ii) counsel to the Debtors, BROUSE McDOWELL, 388 South Main Street, Suite 500, Akron, OH 44311, Attn: Marc B. Merklin; (iii) counsel to the Lenders, SQUIRE, SANDERS & DEMPSEY L.L.P., 221 E. Fourth Street, Suite 2900, Cincinnati, OH 45202-4095, Attn: Jeffrey A. Marks; and (iv) counsel to any Committee then appointed in the Cases.  The final hearing on the Motion (the "**Final Hearing**") shall be on November 30, 2009 at 1:30 P.M., Eastern Time. This Interim Order shall remain in effect until the Final Hearing.

32.     Binding Effect.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lenders, the Debtors, the Debtors' estates, and all creditors and parties in interest, and their respective successors and assigns (including any trustee appointed as a representative of the Debtors' estate or in any Successor Cases).

33.     Controlling Effect.   To the extent that any provision of this Interim Order conflicts with any provision of any of the Pre-Petition Loan Documents or any of the DIP Financing Documents, this Interim Order is deemed to control and shall supersede the conflicting provision(s).

# # #

SUBMITTED BY:

/s/ Marc B. Merklin
Marc B. Merklin (0018195)
Brouse McDowell, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com

*Proposed Counsel for the Debtors
and Debtors-in-Possession*


NO OBJECTION:

/s/ Ronna Jackson
Ronna Jackson
Trial Attorney
U.S. Department of Justice
Office of United States Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Ave., East - Suite 441
Cleveland, Ohio 44114
Telephone: 216.522.7800
Facsimile: 216.522.7193

[764584.2]

# EXHIBIT A

## [Budget]

# Michael Day Enterprises (including M&J)
## Cash Flow Forecast

| Cash Flow Projections - Week Ending Date | Pre-Petition 11/06/09 Wk -1 | 11/13/09 Wk 1 | 11/20/09 Wk 2 | 11/27/09 Wk 3 | 12/04/09 Wk 4 | 12/11/09 Wk 5 | 12/18/09 Wk 6 | 12/25/09 Wk 7 | 01/01/10 Wk 8 | 01/08/10 Wk 9 | 01/15/10 Wk 10 | 01/22/10 Wk 11 | 01/29/10 Wk 12 | 02/05/10 Wk 13 | Total Post-Petition |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Billings** | $738 | $650 | $700 | $600 | $700 | $650 | $650 | $350 | $250 | $750 | $700 | $700 | $700 | $700 | 8,100 |
| Cumulative Billings | 738 | 650 | 1,350 | 1,950 | 2,650 | 3,300 | 3,950 | 4,300 | 4,550 | 5,300 | 6,000 | 6,700 | 7,400 | 8,100 | |
| Collections on Accounts Receivable | 670 | 550 | 550 | 550 | 550 | 500 | 500 | 500 | 400 | 500 | 550 | 550 | 550 | 550 | 6,800 |
| Miscellaneous Receipts | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total weekly cash receipts** | 670 | 550 | 550 | 550 | 550 | 500 | 500 | 500 | 400 | 500 | 550 | 550 | 550 | 550 | 6,800 |
| Gross Payroll Including Taxes | 146 | 50 | 150 | 30 | 150 | 30 | 150 | 30 | 130 | 50 | 150 | 50 | 150 | 50 | 1,230 |
| Commissions | 30 | | | | | 30 | | | | | 30 | - | 30 | | 120 |
| Debt Payment-IRB | 33 | | | | | | | | | | | | | | - |
| Shop/Lab Supplies and Expense | 9 | | | 5 | | | 5 | | | 5 | | | | 5 | 20 |
| Pallets | 7 | | 15 | | | 15 | | | | 15 | | 15 | | | 60 |
| Electricity | | | 95 | | | 95 | | | | | | 95 | | 95 | 380 |
| Gas | - | 3 | | | | | | | | 10 | | | | 10 | 28 |
| Waste | - | | 5 | | 5 | | 5 | | 5 | | 5 | | 5 | | 30 |
| Utility Deposit | - | | 100 | | | | | | | | | | | | 100 |
| Trucking Deposit | - | | 50 | | | | | | | | | | | | 50 |
| Telephone | | 3 | | 5 | | 3 | | 4 | | 3 | | 4 | | 4 | 26 |
| Medical Benefits- Primary, Sec & Flex | 28 | 50 | 25 | 25 | 50 | 25 | 25 | 25 | 25 | 50 | 25 | 25 | 5 | 25 | 320 |
| Repairs and Maintenance | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 260 |
| Workers Compensation | 19 | | | | 20 | | | | | | | | | | 20 |
| Freight and Truck Expense | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | | 30 | 30 | 30 | 30 | 30 | 360 |
| Insurance- Assets & Liability | | | | 33 | | | | | | | | | | | 33 |
| Plant and Equipment Rental | | | | | 44 | | | | | 44 | | | | 44 | 132 |
| Professional Retainers | 50 | | | | | | | | | | | | | | - |
| Professional Services | 35 | | | | | | | | | 280 | - | | | 835 | 1,115 |
| US Trustee Fees | | | | | | | | | 13 | | | | | | 18 |
| Office Supplies and Expense | 2 | | 4 | | | 4 | | | | | 4 | | | | 16 |
| Vehicle Payment | | | 4 | | | 4 | | | | | 4 | | | | 14 |
| Travel | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | | 5 | 5 | 5 | 5 | 5 | 60 |
| Bank Fees | 9 | | | | | | | | | | | | | | - |
| DIP Interest @ P+2% = 5.25% | | | | | 34 | | | | | 60 | | | | 54 | 148 |
| Other- Mighigan Tax | | | | | | | | | | | | | | | - |
| **Total Operating Costs** | 392 | 191 | 503 | 153 | 333 | 193 | 358 | 114 | 193 | 557 | 383 | 114 | 380 | 1,066 | 4,538 |
| **Supplier Payments- Materials Purchased** | 715 | 630 | 615 | 370 | 370 | 370 | 245 | 175 | 525 | 490 | 490 | 490 | 490 | 490 | 5,750 |
| **Grand Total Disbursements** | 1,107 | 821 | 1,118 | 523 | 703 | 563 | 603 | 289 | 718 | 1,047 | 873 | 604 | 870 | 1,556 | 10,288 |
| Cumulative Disbursements | | 821 | 1,939 | 2,462 | 3,165 | 3,728 | 4,331 | 4,620 | 5,338 | 6,385 | 7,258 | 7,862 | 8,732 | 10,288 | |
| Net Cash Flow | ($437) | ($271) | ($568) | $27 | ($153) | ($63) | ($103) | $211 | ($318) | ($547) | ($323) | ($54) | ($320) | ($1,006) | ($3,488) |
| **Net Cumulative Cash Flow** | (437) | (271) | (839) | (812) | (965) | (1,028) | (1,131) | (920) | (1,238) | (1,785) | (2,108) | (2,162) | (2,482) | (3,488) | |
| **Accounts Receivable Beginning** | 4,486 | 4,554 | 4,654 | 4,804 | 4,854 | 5,004 | 5,154 | 5,304 | 5,154 | 5,004 | 5,254 | 5,404 | 5,554 | 5,704 | |
| Plus Billings | 738 | 650 | 700 | 600 | 700 | 650 | 650 | 350 | 250 | 750 | 700 | 700 | 700 | 700 | |
| Less Contras/Credits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Less Collections | (670) | (550) | (550) | (550) | (550) | (500) | (500) | (500) | (400) | (500) | (550) | (550) | (550) | (550) | |
| **Accounts Receivable Ending** | 4,554 | 4,654 | 4,804 | 4,854 | 5,004 | 5,154 | 5,304 | 5,154 | 5,004 | 5,254 | 5,404 | 5,554 | 5,704 | 5,854 | |
| A/R Ineligibles | 147 | 272 | 272 | 272 | 272 | 272 | 272 | 272 | 272 | 272 | 272 | 272 | 272 | 272 | |
| Inventory-Raw & Finished | 1,962 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | |
| Inventory-Reduction in Aged | | | | | | | | | | | | | | | |
| Inventory-WIP | 976 | 1,059 | 1,059 | 1,059 | 1,059 | 1,059 | 1,059 | 1,059 | 1,059 | 1,059 | 1,059 | 1,059 | 1,059 | 1,059 | |
| **Total Collateral less Ineligibles** | 7,345 | 7,589 | 7,739 | 7,789 | 7,939 | 8,089 | 8,239 | 8,089 | 7,939 | 8,189 | 8,339 | 8,489 | 8,639 | 8,789 | |
| **Borrowing Projections** | | | | | | | | | | | | | | | |
| Beginning Line of Credit | $6,681 | $7,118 | $7,389 | $7,957 | $7,930 | $8,083 | $8,146 | $8,249 | $8,038 | $8,356 | $8,902 | $9,225 | $9,279 | $9,599 | 7,118 |
| Borrowings (Repayments) | 670 | 550 | 550 | 550 | 550 | 500 | 500 | 500 | 400 | 500 | 550 | 550 | 550 | 550 | 6,800 |
| Borrowings (Advances) | 1,107 | 821 | 1,118 | 523 | 703 | 563 | 603 | 289 | 718 | 1,047 | 873 | 604 | 870 | 1,556 | 10,288 |
| **Ending Line of Credit** | $7,118 | $7,389 | $7,957 | $7,930 | $8,083 | $8,146 | $8,249 | $8,038 | $8,356 | $8,902 | $9,225 | $9,279 | $9,599 | $10,605 | $10,605 |
| **Credit Line Maximum** | $5,362 | $5,489 | $5,616 | $5,659 | $5,786 | $5,914 | $6,041 | $5,914 | $5,786 | $5,999 | $6,126 | $6,254 | $6,381 | $6,509 | |
| Key Bank Over-Advance | $500 | | | | | | | | | | | | | | |
| **Available Collateral to Borrow** | $5,862 | $5,489 | $5,616 | $5,659 | $5,786 | $5,914 | $6,041 | $5,914 | $5,786 | $5,999 | $6,126 | $6,254 | $6,381 | $6,509 | |
| **Ending Availability** | ($1,256) | ($1,900) | ($2,341) | ($2,271) | ($2,296) | ($2,232) | ($2,207) | ($2,124) | ($2,569) | ($2,904) | ($3,099) | ($3,026) | ($3,218) | ($4,097) | |
| Permitted Overadvance Amount | | (2,000) | (2,441) | (2,371) | (2,396) | (2,332) | (2,307) | (2,224) | (2,669) | (3,004) | (3,199) | (3,126) | (3,318) | (4,197) | |
| **Weekly Spending Limit** | | 903 | 1,230 | 575 | 773 | 619 | 663 | 318 | 790 | 1,151 | 960 | 664 | 957 | 1,712 | - |

# Michael Day Enterprises (including M&J)

*Cash Flow Forecast*

## Professional Fees

### Fees Incurred

| Fees Incurred | Post-Petition | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 11/13/09 | 11/20/09 | 11/27/09 | 12/04/09 | 12/11/09 | 12/18/09 | 12/25/09 | 01/01/10 | 01/08/10 | 01/15/10 | 01/22/10 | 01/29/10 | 02/05/10 | Post-Petition |
| | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 | |
| Debtor's Counsel | 50 | 50 | 50 | 40 | 40 | 40 | 40 | 40 | 25 | 25 | 25 | 35 | 45 | 505 |
| Debtor's IB | | | | | | | | | | | | | 280 | 280 |
| Debtor's FA | 15 | 15 | 15 | 15 | 10 | 5 | 5 | 5 | 5 | 10 | 10 | 10 | 15 | 135 |
| Debtor's Accountant | | | | | | | | | | | | 5 | 5 | 10 |
| Bank Counsel | 20 | 20 | 20 | 20 | 20 | 10 | 10 | 30 | 10 | 15 | 20 | 20 | 20 | 235 |
| | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | - |
| Total | 85 | 85 | 85 | 75 | 70 | 55 | 55 | 75 | 40 | 50 | 55 | 70 | 365 | 1,165 |

### Fees Paid

| Fees Paid | | Post-Petition | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 11/13/09 | 11/20/09 | 11/27/09 | 12/04/09 | 12/11/09 | 12/18/09 | 12/25/09 | 01/01/10 | 01/08/10 | 01/15/10 | 01/22/10 | 01/29/10 | 02/05/10 | Post-Petition |
| | | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 | |
| Debtor's Counsel | 80.0% | | | | | | | | | 152 | | | | | 152 |
| Debtor's IB | 100.0% | | | | | | | | | - | | | | | - |
| Debtor's FA | 80.0% | | | | | | | | | 48 | | | | | 48 |
| Debtor's Accountant | 80.0% | | | | | | | | | - | | | | | - |
| Bank Counsel | 100.0% | | | | | | | | | 80 | | | | | 80 |
| | | | | | | | | | | - | | | | | - |
| Total | | - | - | - | - | - | - | - | - | 280 | - | - | - | - | 280 |

### Final Payment

| Final Payment | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 11/13/09 | 11/20/09 | 11/27/09 | 12/04/09 | 12/11/09 | 12/18/09 | 12/25/09 | 01/01/10 | 01/08/10 | 01/15/10 | 01/22/10 | 01/29/10 | 02/05/10 | Post-Petition |
| | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 | |
| Debtor's Counsel | | | | | | | | | | | | | 353 | 353 |

MDE DIP Budget 111009.xls

**Estimated Fees for Earlier Close:**

| | | |
|---|---|---|
| Debtor's IB | 280 | 280 |
| Debtor's FA | 87 | 87 |
| Debtor's Accountant | 10 | 10 |
| Bank Counsel | 155 | 155 |
| | - | - |
| | 885 | 885 |
| | | |
| Less Retainers | | |
| Debtor's Counsel | - | - |
| Debtor's IB | - | - |
| Debtor's FA | (50) | (50) |
| Debtor's Accountant | - | - |
| Bank Counsel | - | - |
| | | |
| Net Final Payments | 835 | 835 |

**Post-Petition**

| | Wk 1 01/00/00 | Wk 2 01/07/00 | Wk 3 01/14/00 | Wk 4 01/21/00 | Wk 5 01/28/00 | Wk 6 02/04/00 | Wk 7 02/11/00 | Wk 8 02/18/00 | Wk 9 02/25/00 | Wk 10 03/03/00 | Wk 11 03/10/00 | Wk 12 03/17/00 | Wk 13 03/24/00 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Debtor's Counsel | 50 | 100 | 150 | 190 | 230 | 270 | 326 | 366 | 391 | 416 | 441 | 476 | 505 |
| Debtor's IB | | | | | | | 280 | 280 | 280 | 280 | 280 | 280 | 280 |
| Debtor's FA | 15 | 30 | 45 | 60 | 70 | 75 | 84 | 89 | 94 | 104 | 114 | 124 | 135 |
| Debtor's Accountant | - | - | - | - | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 10 | 10 |
| Bank Counsel | 20 | 40 | 60 | 80 | 100 | 110 | 126 | 156 | 166 | 181 | 201 | 221 | 235 |
| | | | | | | | | | | | | | |
| Less retainer | | | | | | | (50) | (50) | (50) | (50) | (50) | (50) | (50) |
| | | | | | | | | | | | | | |
| Total | 85 | 170 | 255 | 330 | 405 | 460 | 771 | 846 | 886 | 936 | 991 | 1,061 | 1,115 |

MDE DIP Budget 111009.xls

# EXHIBIT B

## Section 363 Sale Milestones

(1)     Within 30 days after the Petition Date, the Bankruptcy Court shall have entered an order (the "**Bid Procedures Order**"), in form and substance satisfactory to the Lenders, approving the Debtors' motion to establish bid procedures for a sale of all or substantially all of the assets of the Debtors pursuant to the Asset Purchase Agreement dated as of November 9, 2009 by and between the Debtors and Radici Plastics USA, Inc. or its designee (the "**Asset Purchase Agreement**") or a higher or better bid (the "**363 Sale Transaction**");

(2)     If a "qualified bid" (other than the bid represented by the Asset Purchase Agreement) has been received in accordance with the bid procedures approved by the Bid Procedures Order, then, within 57 days after the Petition Date, the Debtors shall have conducted an auction pursuant to the terms of the Bid Procedures Order;

(3)     Within 60 days after the Petition Date, the Bankruptcy Court shall have entered an order (the "**Sale Order**"), in form and substance satisfactory to the Lenders, approving the 363 Sale Transaction contemplated under the Bid Procedures Order; and

(4)     Within 5 business days after the entry of the Sale Order, the 363 Sale Transaction approved by the Sale Order shall have been substantially consummated.

With respect to each of the 363 Sale Transaction milestones (each a "**Milestone**") referred to in this Exhibit B, the period within which each Milestone is to be completed may be extended in the sole discretion of the Lenders.

CINCINNATI/79009.8