**IT IS SO ORDERED.**

**Dated: 01:13 PM January 13 2010**

MARILYN SHEA-STONUM J2
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Michael Day Enterprises, Inc., *et al.,* | ) | Case Nos. 09-55159 & 09-55162 |
| | ) | |
| Debtors. | ) | |
| | ) | Judge Marilyn Shea-Stonum |

### ORDER (A) AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (B) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF

This matter came on for hearing on January 8, 2009 (the "Sale Hearing"), on (a) the

Motion of the above-captioned debtors and debtors-in-possession (each a "Debtor" and

collectively, the "Debtors") for *Entry of Orders (I) Approving Bidding Procedures, (II)*

*Scheduling an Auction of Debtors Assets and a Hearing to Consider the Sale of the Debtors'*

*Assets and to Approve the Form and Manner of Notice Related Thereto, (III) Approving the Sale*

*of the Assets, or Any Subset Thereto, to the Proponents of the Highest and Best Bids Free and*

- 1 -

*Clear of All Liens, Claims and Interests; and (IV) Approving the Procedures to Provide Notice of*
*Assumption and Assignment of Leases and Contracts, and Fixing Cure Amounts Thereon*
[Docket No. 21] (the "Sale Motion"), and (b) pursuant to the *Order (I) Approving the Bid*
*Procedures To Be Used In Connection With the Sale of the Assets of the Debtors to the*
*Proponents of the Highest and Best Bids For the Assets, (II) Scheduling an Auction and Hearing*
*to Consider the Sale and Approving the Form and Manner of Notice Related Thereto, and (III)*
*Approving the Procedures to Provide Notice of Assumption and Assignment of Leases and*
*Contracts, and Fixing Cure Amounts Thereon* [Docket No. 84] (the "Bid Procedures Order")
(capitalized terms not defined herein shall have the respective meanings as defined in the Sale
Motion and Bid Procedures Order).

Pursuant to the Sale Motion and in accordance with the procedures and related relief
approved in (i) the Bid Procedures Order and (ii) the *Final Order Under 11 U.S.C. §§ 105(a),*
*361, 362, 363 and 364 and Federal Bankruptcy Rules 2002, 4001, 9014 9019 (I) Authorizing*
*Debtors to Obtain Secured Post-Petition Financing and Use of Cash Collateral; (II) Granting*
*Adequate Protection; (III) Modifying the Automatic Stay; (IV) Approving a Settlement Among*
*the Debtors, the Committee and the Lenders; and (V) Granting Related Relief* [Docket No. 87]
(the "DIP Financing Order"), the Debtors seek an order (this "Sale Order"), pursuant to sections
105(a), 363(b), 363(f), and 365 of Title 11 of the United States Code (the "Bankruptcy Code")
and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules"):

(i)     approving the Stalking Horse APA and the Sale of the Assets to the Purchaser (as
defined in the Stalking Horse APA) on the terms and conditions of the Stalking
Horse APA or, after conduct of the Auction, approving the Prevailing Bidder Sale

- 2 -

Documents and the Sale of the Assets (or portion(s) thereof) to that Qualifying Bidder determined to be the Prevailing Bidder having submitted the Prevailing Bid in accordance with the Bid Procedures Order on the terms and conditions of the Prevailing Bidder Sale Documents, in either such case free and clear of all liens, claims, encumbrances, demands and interests (collectively, "Encumbrances"), except as may be provided in the Stalking Horse APA or the Prevailing Bidder Sale Documents, respectively, with all such Encumbrances to attach to the proceeds of the Sale to the same extent and with the same validity and priority as existed with respect to the Assets immediately prior to the Sale;

(ii)     directing the disposition of all proceeds of the Sale of the Assets;

(iii)    approving the Debtors' assumption and assignment of the Assigned Leases and Contracts as may be identified in the Stalking Horse APA or the Prevailing Bidder Sale Documents;

(iv)    determining that (a) the Purchaser or the Prevailing Bidder, as the case may be, is a good faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code, (b) neither the Debtors and the Purchaser nor the Debtors and the Prevailing Bidder engaged in conduct that would permit the Sale to be voided under Section 363(n) of the Bankruptcy Code, (c) the Debtors properly and timely complied with all notice obligations contained in the Bid Procedures Order, (d) the Sale was conducted in accordance with the Bid Procedures and Bid Procedures Order, and (e) after an extensive marketing process prior to and after the Petition Date, the price to be paid for the Assets by the Purchaser or the

-3-

Prevailing Bidder represents the highest and otherwise best offer therefor and constitutes reasonably equivalent value;

(v)     authorizing the Purchaser or the Prevailing Bidder to close the Sale of the Assets as provided in the Stalking Horse APA and that, pursuant to Bankruptcy Rule 6004(h), the Sale Order is not stayed; and

(vi)    granting such other relief as requested in the Sale Motion and set forth in this Sale Order.

The Court having reviewed and considered the relief requested in the Sale Motion and objections, if any, thereto; and the Court having heard statements and arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and after due deliberation thereon it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish good and sufficient cause for the relief granted herein; and therefore for the reasons stated on the record at the time of the Sale Hearing:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.     This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157(b)(1) and 1334(a), and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of these cases and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and Bankruptcy Rules 2002, 6004 and 6006.

C.    Due, proper, timely, adequate and sufficient notice of the Sale Motion, the Bid Procedures Order, the Bid Procedures, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Leases and Contracts, the determinations of the Cure Amounts, and the transactions contemplated thereby and in this Sale Order has been provided in accordance with the Bankruptcy Code, including in accordance with Sections 102(1), 105(a), 363(b) and (f) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, and in compliance with the Bid Procedures Order.  Such notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, entry of this Sale Order or the transactions contemplated thereby or hereby is or shall be required.

D.    A reasonable opportunity to object and be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including the following: (i) the Office of the United States Trustee, (ii) the Debtors' top 20 unsecured creditors, (iii) all entities known to have expressed an interest in acquiring any of the Assets; (iv) all entities known to have asserted any Encumbrance in or upon any of the Assets and (v) all other parties that had filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 2002 as of the date of filing the Sale Motion.

E.    The Debtors may sell the Assets free and clear of all Encumbrances because each entity holding an Encumbrance in any of the Assets to be transferred on the Closing Date (as defined in the Stalking Horse APA) (i) has consented to the Sale or is deemed to have consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Encumbrance or interest, or (iii) otherwise falls within the provisions of Section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards

09-55159-mss    Doc 101    FILED 01/13/10    ENTERED 01/13/10 13:51:33    Page 5 of 19

set forth in Sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Further those holders of Encumbrances who did not object to the Sale Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code.

F.      The Debtors, the Lenders (as defined in the DIP Financing Order) and the Committee concur with the Debtors' determination that no Qualifying Bids were received in accordance with the Bid Procedures and the Bid Procedures Order, and therefore the Auction was not held and the Purchaser's purchase of the Assets under the Stalking Horse APA is the highest and best Sale of the Assets and should be approved.

G.      The Debtors' service of the Sale and Bid Procedures Notice on non-debtor parties to the Assigned Leases and Contracts has afforded sufficient and reasonable opportunity to such non-debtor parties to object to the amounts of their respective proposed Cure Amounts. No such non-debtor parties timely filed an objection to such Sale and Bid Procedures Notice or the Sale Motion. Accordingly, the Cure Amounts in respect of the Assigned Leases and Contracts as set forth in the Sale and Bid Procedures Notice should be approved as binding. For purposes of this Sale Order, the Master Lease (as defined in the DIP Financing Order) shall not be one of the Assigned Leases and Contracts. Further, the Debtors have demonstrated that it is an exercise of sound business judgment to assume and assign the Assigned Leases and Contracts to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Leases and Contracts is in the best interests of the Debtors, their estates, and creditors. The Assigned Leases and Contracts being assigned to the Purchaser are an integral part of the value of the Assets and, accordingly, the assumption and assignment of the Assigned Leases and Contracts is reasonable and enhances the value of the Debtors' estate. Furthermore, via the Debtors' contemplated payment at Closing of the Cure Amounts owing in respect of the

Assigned Leases and Contracts pursuant to the Sale and Bid Procedures Notice, the Debtors will cure any defaults existing prior to the Closing Date under any of the Assigned Leases and Contracts within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code. Upon payment of the Cure Amounts to non-debtor parties to the Assumed Leases and Contracts, no further compensation under Section 365(b)(1)(B) of the Bankruptcy Code is owing to any non-debtor party to any of the Assigned Leases and Contracts for any pecuniary loss resulting from a default prior to the Closing Date under any of the Assigned Leases and Contracts. Furthermore, pursuant to Section 365(b)(1)(C) of the Bankruptcy Code, the Debtors have demonstrated the Purchaser's adequate assurance of future performance under the Assigned Leases and Contracts. Thus, the Debtors have satisfied all of the requirements of Section 365 of the Bankruptcy Code in connection with the Debtors' assumption and assignment of the Assigned Leases and Contracts.

H.     Good and sufficient reasons for approval of the Stalking Horse APA and the Sale have been articulated. The relief requested in the Sale Motion, and approval of the Stalking Horse APA and the Sale of the Assets to the Purchaser pursuant thereto, are in the best interests of the Debtors, their respective estates, their respective creditors and other parties in interest.

I.     The Debtors have demonstrated both (i) good, sufficient and sound business purpose and justification and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize the value of these estates.

-7-

J.      The Debtors have full corporate power and authority to execute the Stalking Horse APA, and all other documents contemplated thereby, and to consummate the transactions contemplated by the Stalking Horse APA.  The Stalking Horse APA and all of the transactions contemplated thereby have been duly and validly authorized by all necessary corporate action of the Debtors.  No consents or approvals, other than the consent and approval of this Court and those expressly provided for in the Stalking Horse APA, are required for the Debtors to consummate the Sale.

K.      The Stalking Horse APA was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions.

L.      The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Stalking Horse APA and at all times after the entry of this Sale Order.  The Stalking Horse APA and all covenants in and conditions thereto, and supplementary agreements, are to be considered an integrated transaction, subject to and protected by Section 363(m) of the Bankruptcy Code.

M.      The consideration provided by the Purchaser pursuant to the Stalking Horse APA (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, any territory, any possession or the District of Columbia.

N.      The transfer and sale of the Assets to the Purchaser pursuant to the Stalking Horse APA will be a legal, valid, and effective transfer of the Assets, and vests or will vest the

Purchaser with all right, title, and interest of the Debtors in the Assets free and clear of all Encumbrances, except as may be set forth in the Stalking Horse APA.

O.     The Purchaser has consented to the relief requested in the Sale Motion, and as provided by the terms of this Sale Order.  The Lenders and the Committee have not objected to the relief requested in the Sale Motion, and as provided by the terms of this Sale Order, and the Lenders and the Committee consent to the entry of this Sale Order.

P.     There are no common incorporators, executive officers, directors or material stockholders or material members between the Debtors and the Purchaser; the Sale does not and will not constitute a "de facto merger" or consolidation or a mere continuation or substantial continuation of the Debtors' business in the Purchaser; and the purpose and intent of the Purchaser is not to avoid the Debtors' liabilities or assist the Debtor in avoiding its liabilities. Accordingly, the transfer of the Assets to the Purchaser and the Debtors' assumption and assignment to the Purchaser of the Assigned Leases and Contracts will not subject the Purchaser to any liability with respect to the operation of the Assets prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability.

Therefore, for good cause shown, the Court being fully advised herein, the Court determines that its foregoing findings and conclusions set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7025, and that such are hereby fully incorporated in this Sale Order as an order of the Court, and accordingly:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Sale Motion is GRANTED on the terms and conditions in this Sale Order.

2.      Any objections to the Auction, the Sale Motion, the Sale of the Assets to the Purchaser or the relief requested therein or thereby, if any, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3.      The Stalking Horse APA is hereby approved pursuant to Sections 105(a), 363(b) and (f), and 365 of the Bankruptcy Code, and all of the terms and conditions thereof, including, but not limited to, the Sale of the Assets to the Purchaser in exchange for the Final Purchase Price (as defined in the Stalking Horse APA) and the Purchaser's assumption of the Assumed Liabilities (as defined in the Stalking Horse APA) are hereby approved.

4.      Pursuant to Sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized to consummate the Sale pursuant to and in accordance with the terms and conditions of the Stalking Horse APA.  The consideration provided by the Purchaser for the Assets under the Stalking Horse APA (a) is and shall be deemed to constitute reasonably equivalent value and fair consideration given to the Debtors in exchange for their right, title, and interest in and to the Assets under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia and (b) is fair and reasonable.  Neither the consideration nor the Stalking Horse APA may be avoided under section 363(n) or any other provision of the Bankruptcy Code or applicable non-bankruptcy law.

5.      The Purchaser is found to be a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and shall be entitled to the protections afforded a good faith purchaser pursuant to such section.  The Purchaser is not an insider of or affiliated with the Debtors, the Purchaser has acted in "good faith" in connection with the Sale and, thus, the

-10-

Purchaser is entitled to the full protections of section 363(m) of the Bankruptcy Code. Consistent therewith, the transactions contemplated by the Stalking Horse APA are being undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser. Without limiting the generality of the foregoing, in the absence of a stay pending appeal of this Sale Order, upon the Purchaser's consummation of the Sale and purchase of the Assets after entry of this Sale Order, then with respect to the Sale, including any assumption and assignment of Assigned Leases and Contracts pursuant to this Sale Order, the Purchaser shall be entitled to the protections of Section 363(m) of the Bankruptcy Code if this Sale Order or any authorization contained herein is reversed or otherwise modified on appeal.

6.     The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Stalking Horse APA and all other additional instruments, documents and actions that may be reasonably necessary or desirable to implement the Stalking Horse APA and/or for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Assets, or as otherwise may be necessary or appropriate to the performance of the obligations as contemplated by the Stalking Horse APA.  The Debtors are further authorized and directed to take all further actions as may be requested by the Purchaser for the purpose of transferring the Assets and assigning the Assigned Leases and Contracts to Purchaser as identified in the Stalking Horse APA or as may be necessary or appropriate to the performance of the obligations contemplated by the Stalking Horse APA, without further order of this Court.

7.     The Final Purchase Price and other proceeds of the Sale of the Assets to the Purchaser payable and paid by the Purchaser under the Stalking Horse APA to the Debtors shall be paid by the Debtors in cash as directed pursuant to the DIP Financing Order, with the $325,000 of Creditor Trust Funds (as defined in the DIP Financing Order) to be deposited into a bank account established by counsel for the Committee to be held in escrow for the Creditor Trust (as defined in the DIP Financing Order) pending formal formation of the Creditor Trust, as and when payable and paid by the Purchaser to the Debtors, under and in accordance with the terms and conditions set forth in the Stalking Horse APA and the DIP Financing Order, and amounts necessary to satisfy the respective Cure Amounts for any Assigned Leases and Contracts shall be paid by the Debtors to non-debtor parties to the Assigned Leases and Contracts as soon as reasonably possible after the Closing Date.

8.     Except as expressly permitted or otherwise specifically provided for in the Stalking Horse APA or this Sale Order, pursuant to Sections 105(a) and 363 (b) and (f) of the Bankruptcy Code, the Assets shall be transferred to the Purchaser, and, as of the Closing Date, shall be free and clear of all Encumbrances, including without limitation, free and clear of any liens, mortgages, pledges, security interests, restrictions, prior assignments, liabilities, obligations, encumbrances, charges, claims, and interests of any and every kind, nature, and description whatsoever (together with the Encumbrances, collectively, the "Liens"), with all such Liens attaching to the proceeds paid to the Debtors by the Purchaser to the same extent and with the same priority, validity, force and effect as the Liens had against the Assets immediately prior to the Closing, subject to any rights, claims and defenses the Debtors may possess with respect thereto.  The transfer of the Assets to the Purchaser (a) shall constitute a legal, valid, and effective transfer of the Assets, authorized pursuant to the Bankruptcy Code, and (b) shall vest in

-12-

the Purchaser all right, title, and interest of the Debtors in and to the Assets, free and clear of all Liens (other than the Assumed Liabilities and the Purchaser's obligations under the Stalking Horse APA). Except as may be set forth in the Stalking Horse APA, the Purchaser shall have no liability for any claim or Encumbrance against, in, or on the Assets or for any claim, damages or other obligation of or against the Debtors related to the Assets by reason of the transfer of the Assets to the Purchaser or by reason of or in connection with the Debtors' prior conduct of the businesses. Without limiting the foregoing, the Purchaser and the Assets shall not be liable for any ERISA, tax, labor or environmental law, rule or regulation (including without limitation filing requirements under such laws, rules or regulations) or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or doctrine. By virtue of the Purchaser's purchase of the Assets, the Purchaser and its affiliates shall have no liability or obligation for any of the Debtors' liabilities or obligations under the WARN ACT (29 U.S.C. §§ 210, *et seq.*) or the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) or any foreign, federal, state or local environmental law.

9.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens in or on the Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and releases of all Liens that the person or entity has with respect to the Assets, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all

Liens against, in, or on the Assets of any kind or nature whatsoever (other than the Assumed Liabilities); *provided, however*, that nothing in this paragraph shall operate to impair the free and clear transfer of the Assets authorized by this Sale Order generally or otherwise require the Debtors or the Purchaser to obtain or file any such termination statements, satisfactions, or releases.

10.    Pursuant to Sections 105(a) and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of the Sale to the Purchaser under the Stalking Horse APA, the Debtors' assumption and assignment of the Assigned Leases and Contracts to the Purchaser is hereby authorized and approved.  The Debtors are hereby authorized, directed, and empowered in accordance with Sections 105(a) and 365 of the Bankruptcy Code to (a) pay the Cure Amounts under the Assigned Leases and Contracts, (b) assume and assign to the Purchaser, effective upon the Closing Date, the Assigned Leases and Contracts, free and clear of all Liens, and (c) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Leases and Contracts to the Purchaser.  The Assigned Leases and Contracts shall be assigned to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Lease and Contract that prohibits, restricts, or conditions such assignment or transfer (including any provisions of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code). Consistent with the foregoing, and pursuant to the terms of the Stalking Horse APA and this Sale Order, all defaults or other obligations of the Debtors under the Assigned Leases and Contracts arising or accruing prior to the date of this Sale Order (except to the extent such obligations constitute Assumed Liabilities) shall be cured by the Debtors at the Closing Date via payment of the Cure Amounts as set forth in the Sale and Bid Procedures Notice, with the Debtors being

-14-

responsible for paying such respective and aggregate Cure Amounts.  Furthermore, consistent with the foregoing, the non-debtor parties to respective Assigned Leases and Contracts are hereby forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Purchaser or their affiliates, or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing, and, absent any defaults by the Purchaser subsequent to the Closing Date, each such non-debtor party is hereby directed to perform all of their obligations under the respective Assigned Leases and Contracts to which it is a party.

11.     Except as expressly permitted by the Stalking Horse APA or this Sale Order, all persons and entities, including, but not limited to, all equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding claims or Liens of any kind or nature whatsoever against or in the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against the Purchaser, its property, its successors and assigns, its affiliates or the Assets, such persons' or entities' Liens.  Following the Closing Date, and except with respect to the Assumed Liabilities, no holder of a Lien against or in the Debtors or any of the Assets shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to such Lien.

12.     Except as specifically provided in the Stalking Horse APA with respect to the Assumed Liabilities, the transfer of the Assets to the Purchaser pursuant to the Stalking Horse

APA shall not result in (i) the Purchaser having any liability or responsibility for any Lien against the Debtors or against an insider of the Debtors, or (ii) the Purchaser having any liability or responsibility to the Debtors, except pursuant to the Stalking Horse APA and this Sale Order.

13.    The Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Assets or any of the Assigned Leases and Contracts, other than as expressly set forth herein and in the Stalking Horse APA or as incurred under Assigned Leases and Contracts following entry of this Sale Order.  Without limiting the effect or scope of the foregoing, the transfer of the Assets from the Debtors to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets) to any liability for claims or any Liens against the Debtors or the Assets by reason of such transfer under the laws of the United States or any state, territory or possession thereof applicable to such transactions.  Neither the Purchaser nor its affiliates, successors or assigns shall be deemed, as a result of any action taken in connection with its purchase of the Assets or the transactions under the Stalking Horse APA, or its subsequent ownership or use of the Assets, to be a successor to the Debtors or their businesses.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Stalking Horse APA, the Purchaser shall not be liable for any claims or Liens against the Assets, the Debtors or any of the Debtors' predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors.

14.    The transfer of the Assets to the Purchaser pursuant to the Stalking Horse APA constitutes a legal, valid and effective transfer of the Assets, and shall vest the Purchaser with all

right, title and interest of the Debtors in and to the Assets, free and clear of all Liens of any kind

or nature whatsoever. The failure specifically to include any particular provisions of the Stalking

Horse APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it

being the intent of the Court that the Stalking Horse APA be authorized and approved in its

entirety.

15. This Sale Order shall be binding upon and shall govern the acts of all entities,

including without limitation all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state and local officials, and all other

persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the Assets.

16. All persons or entities who are presently, or on the Closing Date may be, in

possession of any of the Assets, are hereby directed to surrender possession of the Assets to the

Purchaser on the Closing Date.

17. The Stalking Horse APA and the transactions and instruments contemplated

thereby shall be enforceable against and binding upon and shall not be subject to rejection or

avoidance by the Debtors or any chapter 7 or chapter 11 trustee for the Debtors or their estates or

any by other person or entity on behalf of the Debtors, and shall be enforceable against and

binding upon any such trustee, any creditor of the Debtors and any holders of Liens

notwithstanding any subsequent appointment of any trustee, responsible person, estate

administrator, representative or similar person for or in connection with the Debtors' estates or

affairs in this case or in any subsequent case under the Bankruptcy Code involving the Debtors

-17-

or the Assets. Furthermore, nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or any order of the Court confirming such plan(s) or any other order entered in these chapter 11 cases (or any subsequent chapter 7 case(s)) shall conflict with or derogate from the provisions of the Stalking Horse APA or the terms of this Sale Order.

18.     Nothing in this Sale Order is intended to or shall be deemed to modify the terms of the Stalking Horse APA or the DIP Financing Order, except as may be expressly provided herein.

19.     The Stalking Horse APA may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, with the written consent of the Lenders and the Committee, which consent shall not be unreasonably withheld, in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement is not material. The terms and provisions of this Sale Order shall inure to the benefit of and shall be fully enforceable by the Purchaser's successors and assigns.

20.     To the extent that Section 1146(c) of the Bankruptcy Code applies, the Sale of the Assets to the Purchaser shall be exempt from any and all stamp, transfer, recording, and other similar taxes (other than income taxes), and any transfer fees or other similar costs incurred or assessed by any federal, state, local, or foreign taxing authority (including interest and penalties, if any) in connection with the Sale or transfer of the Assets to Purchaser or the transactions contemplated by the Stalking Horse APA.

21.     Except as otherwise provided by further order of this Court, this Court shall retain jurisdiction to resolve any disputes arising under or relating to the Stalking Horse APA and this Sale Order.

09-55159-mss    Doc 101    FILED 01/13/10    ENTERED 01/13/10 13:51:33    Page 18 of 19

22.     This Sale Order is a final order and, in accordance with Bankruptcy Rule 8002(a), the time to file a notice of appeal of this Sale Order shall commence on the date of the entry of this Sale Order by the Court.  Pursuant to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs immediate entry of a judgment as set forth herein and directs that the ten-day stay otherwise applicable pursuant to Bankruptcy Rules 6004(h) and 6006(d) be waived.

23.     Nothing in this Sale Order shall impair, modify or limit the rights of any party with respect to claims or defenses under Section 506(c) of the Bankruptcy Code, and that if the Court finds that a creditor's collateral should be surcharged under Section 506(c) of the Bankruptcy Code, then such creditor shall promptly remit such funds after entry of a final order, and that the receipt of any sale proceeds under this Sale Order shall be deemed to have been conditioned on such party's consent to this provision; provided, however, that pursuant to the terms of the DIP Financing Order, this paragraph 23 shall not apply to the Lenders or their collateral.

# # #


SUBMITTED BY:


*/s/* Mark B. Merklin
Marc B. Merklin  (0018195)
BROUSE MCDOWELL, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com

Counsel for the Debtors
and Debtors-in-Possession